IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| ALBERT J. ASTARITA, DIANA M. OWENS, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) No. 5:17-06151-CV-RK |
| v. | ) <br> ) |
| MENARD, INC., | ) <br> ) |
| Defendant. | ) |

**ORDER STAYING CASE AND COMPELLING ARBITRATION
AS TO PLAINTIFF ASTARITA'S CLAIMS ONLY**

Plaintiffs Albert J. Astarita and Diana M. Owens bring this putative class action against Defendant Menard, Inc. ("Menard") alleging that Menard failed to pay overtime wages in violation of federal and state laws. Before the Court is Menard's Renewed Motion to Dismiss Second Amended Complaint or, in the Alternative, to Stay the Proceedings and Compel Arbitration ("Motion to Compel"). (Doc. 89.) Plaintiff Astarita opposes the Motion to Compel, and it is fully briefed. (Docs. 90, 92, 101.) For the following reasons, the Motion to Compel is **GRANTED in part** and **DENIED in part**. In particular, the request to compel Astarita to arbitration and stay his claims in this Court is **GRANTED**, and the request to dismiss the case is **DENIED**.

**Background**[1]

Astarita began working for Menard in the Flooring Department in December 2016. (Doc. 78 at ¶ 8.) Shortly after his initial hire, Astarita executed an agreement (the "2016 Agreement") (doc. 90 at 1-2; doc. 92-1), which provided, in relevant part:

> I agree that all problems, claims and disputes experienced related to my employment may be resolved in one of the following ways: 1) I understand that I may bring a claim or charge of discrimination with the U.S. Equal Opportunity Commission, National Labor Relations Board or comparable state or local agencies; 2) individual claims which are not part of a class, collective or representative action **must** be resolved by binding arbitration. Unless Menard and I agree otherwise, any arbitration proceedings will take place in the county of my Menard's [*sic*] employment where the dispute arose.
> . . . .

---

[1] The background facts are taken from Astarita's Second Amended Complaint (doc. 78) and the parties' briefing and exhibits on the pending Motion (docs. 90, 92, 101).

> THIS DOCUMENT CONTAINS A BINDING ARBITRATION PROVISION FOR INDIVIDUAL CLAIMS WHICH MAY BE ENFORCED BY BOTH MENARD, INC [*sic*] AND ME. THE PARTIES AGREE THAT BOTH I AND MENARD, INC. ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY IF I FILE A CLAIM INDIVIDUALLY, BUT NOT IF I AM A MEMBER OF A CLASS, COLLECTIVE OR REPRESENTATIVE PROCEEDING. I HAVE READ THIS ENTIRE AGREEMENT AND I FULLY UNDERSTAND THE LIMITATIONS WHICH IT IMPOSES UPON ME, AND I UNDERSTAND THAT THIS AGREEMENT CANNOT BE MODIFIED EXCEPT BY THE PRESIDENT OF MENARD, INC.

(Doc. 92-1 at 2 (emphasis in original).) The 2016 Agreement contained a designated signature line for both the "Team Member" and for Menard, and both Astarita and a representative of Menard signed it. (*Id.*)

In February 2017, Astarita electronically agreed to[2] a document entitled "2017 Employment Agreement Acceptance Page" ("2017 Agreement"). (Doc. 90-1 at 2.) The 2017 Agreement provided, in relevant part:

> Claims may only be brought in your or Menards' individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. Unless both you and Menards agree otherwise, the arbitrator may not consolidate more than one person's claim and may not otherwise preside over any form of a representative or class proceeding.
>
> Any and all claims shall be resolved by binding arbitration at a location within the county of your Menards employment where the dispute arose pursuant to the National Rules of the Resolution of Employment Disputes of the American Arbitration Association ("AAA") located at 150 North Michigan Avenue, Suite 3050, Chicago, Illinois 60601, and with AAA-affiliated arbitrators. You understand that the AAA National Rules of the Resolution of Employment Disputes shall govern the fees in this matter, and that the costs of filing a demand for arbitration will not exceed the costs if [*sic*] filing a civil complaint in federal court. Menards agrees to pay all the arbitration costs after the filing of the original arbitration action except for your attorneys' fees unless authorized by state and/or federal law and approved by the arbitrator. A copy of the National Rules of the Resolution of Employment Disputes and fee schedule of the American Arbitration Association may be obtained by contacting the AAA at the address listed above.
>
> Nothing in this Agreement infringes on your ability to file a claim or charge of discrimination with the U.S. Equal Employment Opportunity Commission, National Labor Relations Board or comparable state or local agencies. These

---

[2] Astarita denied agreeing to this agreement during his testimony in an earlier hearing in this case. (Doc. 90 at 2, n.1; Doc. 90-2; Doc. 92 at 8.) However, in his opposition to the present motion, he does not raise a challenge to the 2017 Agreement on this basis. (Doc. 92.)

agencies have the authority to carry out their statutory duties by investigating the charge, issuing a determination, filing a lawsuit in Federal or state court in their own name, or taking any other action authorized under these statutes. You understand that you have the right to participate in such action. If you file a complaint or charge with any Federal, state or local administrative agency such agency will [*sic*] the exclusive jurisdiction until they either dismiss your complaint or charge or issue a "Right to Sue' [*sic*] notice to you.

> YOU AND MENARDS AGREE THAT, BY ENTERING INTO THIS AGREEMENT WHICH CONTAINS A BINDNG [*sic*] ARBITRATION PROVISION, THAT BOTH YOU AND MENARDS ARE EACH WAIVING THE RIGHT TO A TRIAL OR JURY OR PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. YOU AND MENARDS BOTH AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER IN YOUR OR ITS INDIVIDUAL CAPACITY ONLY AND NOT AS A CLASS MEMBER OR CLASS REPRESENTATIVE IN ANY PURPORTED CLASS, COLLECTIVE OR REPRESENTATIVE PROCEEDING.

(*Id.*) The 2017 Agreement did not contain designated signature lines for Astarita or Menard but does contain an electronic stamp that provides:

> Team Member: ASTARITA, ALBERT
> TM #: 1692281
> Policy/Procedure/Training Name: 2017 Employee Agreement Acceptance Page
> Date Policy/Procedure/Training was read and agreed to: 02/03/2017 11:32 AM

(*Id.*) Menard has also submitted an attestation from a representative that the copy of the 2017 Agreement submitted to the Court is a copy "of the electronic versions [*sic*] presented to and agreed to by the team member." (*Id.* at 1.)

The Second Amended Complaint asserts claims against Menard for violations of the Fair Labor Standards Act ("FLSA") (Count I); violations of the Missouri Minimum Wage Law (Count II); unjust enrichment / quantum meruit (Count IV); breach of contract (Count V); and retaliation under the FLSA (Count VI).[3] (Doc. 78.)

## Discussion

Section 2 of the Federal Arbitration Act (FAA), its primary substantive provision, states: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Under § 3, a party may apply to a federal court for a stay of the trial of an action

---

[3] Count III relates to Plaintiff Diana Owens.

'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3). "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Id.* (quoting 9 U.S.C. § 4). "These provisions reflect both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *Driver v. BPV Mkt. Place Inv'rs, L.L.C.*, No. 4-17-cv-1607-CAS, 2018 WL 3363795, *4 (E.D. Mo. July 10, 2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)) (other citation and internal quotation marks omitted).

"Because arbitration is a matter of contract, whether an arbitration provision is valid is a matter of state contract law, and an arbitration provision may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability . . . ." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (citations and internal quotation marks omitted). The parties do not dispute that Missouri law governs the issue of whether a valid agreement has been formed as to Astarita. (Doc. 90 at 5-8; doc. 92 at 10-11.) When presented with a motion to compel arbitration, the Court's role is limited to two inquiries: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of the agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016) (citation and quotation mark omitted). "The party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement." *Driver*, 2018 WL 3363795, at *4 (citation and quotation marks omitted).

Parties may also "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68-69 (citations omitted). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70.

Menard moves the Court to dismiss Astarita's claims in the Second Amended Complaint and compel arbitration, or stay this case pending arbitration. In support, Menard argues that Astarita's claims are subject to a valid arbitration provision in the 2017 Agreement in which Astarita agreed to arbitrate, in an individual capacity, the claims he has brought against Menard in

4

this lawsuit. Menard further argues that the 2017 Agreement's delegation provision requires the threshold issue of arbitrability to be decided by the arbitrator. Astarita opposes the motion and purports to challenge the validity of both the delegation provision and the arbitration provision. Astarita does not dispute that his claims fall within the scope of the 2017 Agreement. The issue for the Court is whether there is a valid arbitration agreement. In turn, the Court starts with considering the delegation provision, as an additional, antecedent arbitration agreement Menard asks to enforce.

I.  **Whether the Delegation Provision is Valid**

"There are two types of validity challenges under § 2" of the FAA:

> One type challenges specifically the validity of the agreement to arbitrate, and [t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.

*Rent-A-Center*, 561 U.S. at 68-69 (2010) (internal quotation marks omitted) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). "[O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.* "That is because § 2 states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Id.* at 70 (emphasis in original). Therefore, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* "Accordingly, unless [a party] challenge[s] the delegation provision specifically, [courts] must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." *Id.* at 72.

Here, the 2017 Agreement provides that "[a]ny and all claims shall be resolved by binding arbitration . . . pursuant to the National Rules of the Resolution of Employment Disputes of the American Arbitration Association ("AAA")." (Doc. 90-1 at 2.) The AAA Employment Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Rule 6(a) of the AAA Employment Arbitration Rules and Mediation Procedures, *available* at https://www.adr.org/Rules.

Astarita "does not dispute that the 2017 Agreement references the AAA Rules, and thus, the question of arbitrability is validly delegated to an arbitrator." (Doc. 92 at 9 (citing *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) ("By incorporating the AAA Rules, the parties agreed to allow the arbitrator to determine threshold questions of arbitrability.")).) *See also Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (holding that a contract's incorporation of the AAA jurisdiction rule "constitute[d] a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator"); *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 48 (Mo. banc 2017) ("By clearly referencing the AAA commercial arbitration rules, the parties expressed their intent to arbitrate any dispute under these rules, including the AAA's 'jurisdiction' rule . . . .").

Astarita argues (1) that *Menard* did not agree to the 2017 Agreement and (2) that there are irreconcilable conflicts between the 2017 Agreement and the 2016 Agreement. Astarita states that when discussing the 2017 Agreement throughout his brief, he is challenging both the delegation provision and the arbitration provision, and he acknowledges that his arguments for challenging both provisions are the same. (Doc. 92 at 11 n.1.) Astarita further contends that because both provisions are invalid, the issue of arbitrability should be decided by the Court. The Court concludes that, despite Astarita's characterization of these arguments as specific to the delegation provision, the arguments go to the contract as a whole and must be decided by an arbitrator under *Rent-A-Center*.

As to Astarita's first challenge, he asserts that the 2017 Agreement does not satisfy the elements of a contract because Menard has failed to prove its own acceptance of the agreement. He relies on *Cody v. Chase Professionals*, No. 18-06025-CV-SJ-ODS, 2018 WL 2219090 (W.D. Mo. May 15, 2018), and *Baier v. Darden Restsaurants*, 420 S.W.3d 733 (Mo. App. 2014), for the proposition that "conclusive evidence of mutual assent" is required to form an arbitration contract. Astarita points to the 2017's Agreement's lack of a signature by Menard and the fact that the 2016 Agreement was signed by both Astarita and a Menard representative. He argues that Menard has not otherwise manifested its assent to the terms of the 2017 Agreement. In addition, Astarita maintains that contrary evidence of Menard's intent to assent to the 2017 Agreement exists in the record, namely: the fact that the 2016 Agreement contained a signature line for both Astarita and Menard and language in Menard's own Booklet that he claims suggests Menard did not intend for the 2017 Agreement to be binding on Menard.

6

This challenge regarding the lack of mutual assent goes to the validity of the 2017 Agreement as a whole. It is not a challenge specific to the delegation provision. Although challenges to "common procedures *as applied*" to a delegation provision could be a question for the Court, Astarita's challenge is to the whole arbitration agreement. *Rent-A-Center*, 561 U.S. at 74. "Any challenge to the validity of the contract as a whole 'should . . . be considered by an arbitrator, not a court.'" *M.A. Mortenson Co. v. Saunders Concrete Co.*, 676 F.3d 1153, 1158 (8th Cir. 2012) (quoting *Buckeye*, 546 U.S. at 446).

As to Astarita's second challenge, he argues that the arbitration provisions in the 2016 Agreement and 2017 Agreement are in direct conflict in that: the 2016 Agreement states the parties are not waiving the right to class actions whereas the 2017 Agreement states the parties are waiving that right. Astarita maintains that this is an irreconcilable conflict that demonstrates that the 2017 Agreement does not constitute a conclusive meeting of the minds between the parties with respect to what claims are appropriate for arbitration. This challenge also goes to the validity of the 2017 Agreement as a whole.[4] *See Driver*, 2018 WL 3363795, at *7 (E.D. Mo. July 10, 2018) (holding that the plaintiff's argument that there was no meeting of the minds with respect to the arbitration delegation provision because its terms were incomprehensible concerned the contract as a whole, although plaintiff asserted it concerned the delegation provision).

"If the party resisting arbitration does not challenge the enforceability of a delegation provision, 'the only question for a court faced with a motion to compel arbitration is whether the delegation provision clearly and unmistakably delegated authority to the arbitrator to determine issues of arbitrability.'" *Id.* at *5 (quoting *Dotson v. Dillard's, Inc.*, 472 S.W.3d 599, 605-06 (Mo. App. 2015) ("Dotson never raised any challenge below to the delegation provision itself; though he challenged the validity and enforceability of the arbitration agreement, *as a whole*, he never suggested that the delegation provision either failed to clearly and unmistakably grant authority to the arbitrator to determine arbitrability of the issues or that it was otherwise unenforceable.")).

As stated above, it is not disputed that the question of arbitrability is clearly and unmistakably delegated to the arbitrator per the incorporation of the AAA Rules. (Doc. 92 at 9.)

---

[4] Indeed, Astarita summarizes his challenges to the arbitration and delegation provisions as follows: "Under Missouri law, the purported agreements [in the 2017 Agreement] are not valid and enforceable contracts as both agreements were not validly formed – each lack mutual assent or a meeting of the minds between Defendant and Plaintiff Astarita." (Doc. 92 at 5.)

7

AAA's Rule 6(a) broadly provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Therefore, any dispute about the validity of the 2017 Agreement as a whole, including its formation, is for the arbitrator, not the Court. *See Driver*, 2018 WL 3363795, at *5-8; *State ex rel. Pinkerton*, 531 S.W.3d at 51 (holding that the trial court did not err in ordering the parties to arbitrate threshold issues, including issues of contract formation, where an identical AAA jurisdictional rule was incorporated into the agreement and no meritorious challenge was lodged specific to the delegation provision).

Because Astarita does not challenge the delegation provision specifically, the Court must treat it as valid under § 2 and enforce it according to its terms. As provided by the incorporation of the AAA Rules, the arbitrator has exclusive authority to resolve Astarita's challenges to the validity of the 2017 Agreement as a whole. The Court must therefore enforce the delegation provision's terms and leave Astarita's challenges to the arbitrator for determination.[5] *M.A. Mortenson Co.*, 676 F.3d at 1158.[6]

## II. Whether to Dismiss or Stay Astarita's Claims Pending Arbitration

Under § 3 of the FAA, courts are required to stay an action pending arbitration, rather than dismiss it. *Green*, 653 F.3d at 769 (citing 9 U.S.C. § 3). Pursuant to a judicially-created exception to this general rule, "courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Id.* at 769-70. As in *Green*, here, the question of arbitrability will be determined by the arbitrator. The arbitrator may determine that the parties did not form an arbitration agreement. Then, Astarita's claims

---

[5] Although Menard states that the United States Supreme Court's recent decision in *Epic Systems Corporation v. Lewis*, is dispositive of this case, Menard stretches the implication of its limited holding, which forecloses a specific challenge under the National Labor Relations Act to a class action waiver in an arbitration agreement. 138 S. Ct. 1612 (2018).

[6] While the Court acknowledges the apparent "chicken and egg" problem of referring issues that could be construed as contract "formation" issues to the arbitrator, the Court is bound to apply the law as interpreted by the Eighth Circuit: "Any challenge to the validity of the contract as a whole 'should . . . be considered by an arbitrator, not a court.'" *M.A. Mortenson Co.*, 676 F.3d at 1158 (quoting *Buckeye*, 546 U.S. at 446). The Court further emphasizes that Astarita does not challenge the delegation provision on the ground that *he* did not agree to it.

would be properly submitted to the Court. Given it is not clear that the entire controversy between the parties will be resolved by arbitration, the Court will stay, and not dismiss, Astarita's claims.[7]

### Conclusion

For the reasons above, the Court concludes that Menard has met its burden to prove the existence of a valid and enforceable arbitration agreement. Because the parties have agreed to arbitrate gateway questions of arbitrability per the delegation provision contained in the 2017 Agreement, Plaintiff Astarita's challenges to the 2017 Agreement are for the arbitrator to determine. Accordingly,

1) Menard's Motion to Compel (doc. 89) is **GRANTED in part** and **DENIED in part**. In particular, Menard's request to compel arbitration of Astarita's claims is **GRANTED**, and the request to dismiss the case is **DENIED**.
2) Plaintiff Astarita's claims are **STAYED** pending completion of arbitration. 9 U.S.C. § 3.
3) Counsel for the parties shall file a joint status report 90 days of the date of this Order and every 90 days thereafter until the claims are finally resolved.
4) All remaining relief requested in the Motion to Compel is **DENIED**.

   **IT IS SO ORDERED.**

                                                         s/ Roseann A. Ketchmark
                                                         ROSEANN A. KETCHMARK, JUDGE
                                                         UNITED STATES DISTRICT COURT

DATED: November 13, 2018

---

[7] The Court notes that this motion applies only to Astarita's claims. Plaintiff Diana Owens' claims are not at issue and remain pending before the Court. In addition, Menard asks the Court to dismiss the claims of all opt-in plaintiffs who signed arbitration agreements with Menard containing similar arbitration provisions. (Doc. 90 at 5, 9-10.) Menard states the sole putative opt-in plaintiff, Aaron Thomas, signed an agreement with Menard that contained a class/collective action waiver. (Doc. 90 at 9 n.3; doc. 90-3.) The Court declines to do so as Menard cites no authority for the proposition that the Court can compel arbitration as to putative class members who are not before the Court. Furthermore, the parties' various "notices" of activity in a related FLSA collective action currently pending in the United States District Court for the Northern District of Ohio (docs. 106, 109, 110, 111, and 112) are not the subject of any formal motion, and on the present record, Menard has not provided the Court with the legal standard for addressing or any authority to support its argument that the existence of the parallel proceeding is a sufficient reason to dismiss this case.