IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| ALBERT J. ASTARITA, and<br>DIANA M. OWENS, individually, and on<br>behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>MENARD, INC. d/b/a MENARDS,<br><br>      Defendant. | Case No. 5:17-CV-06151-RK |

## MENARD'S SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S MOTION FOR CORRECTIVE NOTICE AND EQUITABLE TOLLING

During the July 25, 2019 telephonic hearing, the Court instructed Defendant Menard, Inc. ("Menard") to explain why a second, "corrective" class notice would be erroneous. There are at least three reasons why granting Plaintiff's request for such notice would be in error: First, prior to the U.S. Supreme Court's decision in *Epic Systems Corp. v. Lewis*, 584 U.S. ___, 138 S.Ct. 1612 (2018), the Eighth Circuit had already determined that individuals who signed class/collective action waivers had not waived a substantive right. Second, in *Epic Systems*, the Supreme Court confirmed that there is no substantive right to bring an FLSA claim as part of a collective action under the National Labor Relations Act ("NLRA"). And third, the National Labor Relations Board ("NLRB") recently determined in *Cordúa Restaurants, Inc.*, 368 NLRB No. 43 (Aug. 14, 2019), that an employer can obtain class/collective action waivers from employees *because of* a collective action.

For any or all of these reasons, Plaintiff's request for corrective notice and her corresponding request for equitable tolling (Dkt. 162) should be denied.

I.     **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

Menard has used a variation of the arbitration agreements at issue since at least the late 1990s. Prior to its settlement with the NLRB in 2016, Menard had consistently included class/collective action waivers in these agreements. When the NLRB asserted that such a waiver was a violation of Section 7 of the NLRA, Menard removed this language from the text of its arbitration agreements for non-supervisory employees effective in June 2016 (referred to in the vernacular of this case as the "No-Arb" agreement). However, after the Supreme Court's decision in *Epic Systems* in May 2018, Menard once again began including class/collective action waivers in the arbitration agreements signed by all newly-hired non-supervisory employees, as well as updating such agreements for all current non-supervisory employees

1

during the merit review process. It has been the practice of Menard, even prior to *Epic Systems*, that any employees promoted into management positions sign an employment agreement that contained such a waiver, as those employees were not covered by Section 7 of the NLRA.

Citing this change, along with Menard's longstanding practice to have employees promoted into management positions sign agreements containing a similar waiver, Plaintiff asks this Court to allow her to send a supplemental class notice to current and former Menard employees who originally signed a "No-Arb" agreement at time of hire, but who did not previously receive notice of Plaintiff's action.[1] (Dkt. 162.) Plaintiff filed this lawsuit on December 21, 2017. (Dkt. 1.)

## II. ARGUMENT

*Epic Systems* clarified that an employee's rights arising from the NLRA and/or FLSA can be vindicated *either* through the procedural mechanisms of collective action *or* through the arbitration process, and thus, the employee has not waived a substantive right by signing an arbitration agreement. *See, e.g., Epic Systems*; *see also Gaffers v. Kelly Serv's., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) (post-*Epic Systems*, the right to proceed as part of a collective action does not override an enforceable arbitration agreement). In fact, although the Eighth Circuit has not decided any cases post-*Epic Systems* challenging the validity of class/collective action waivers, the Eighth Circuit had already held that individuals who signed class/collective action waivers had **not waived a substantive right**. *See, e.g., Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013) ("arbitration agreements containing class waivers are enforceable in claims

---

[1] On December 7, 2018, the Court conditionally certified the collective action (Dkt. 118), and on December 14, 2018, notice was issued to 12,837 putative class members. The parties subsequently attempted to mediate this matter, during the course of which Menard provided information to Plaintiff's counsel, under the protections of Fed. R. Evid. 408, demonstrating that Menard had hired more non-supervisory employees than the 12,837 who received notice. After mediation failed, Plaintiff initiated this "discovery" dispute, challenging Menard's original class list and seeking a second class notice.

2

brought under the FLSA."); *see also McLeod v. General Mills, Inc.*, 856 F.3d 1160, 1165 (8th Cir. 2017) (explaining, in ADEA context, that 29 U.S.C. § 216(b) "does not create a non-waivable substantive right; rather its class-action authorization can be waived by a valid arbitration agreement."). Nothing in the *Epic Systems* decision softens this interpretation of the FAA and FLSA; to the contrary, *Epic Systems* endorses the Eighth Circuit's interpretation.

Because there is no substantive right to bring an FLSA claim as part of a collective action, and because Menard's arbitration agreements are valid and enforceable, employees who signed these class/collective action waivers post-*Epic Systems* do not belong on the collective notice list in this case. These employees waived their right to participate in a collective action, and thus are not putative plaintiffs. *See, e.g., In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019) (putative collective members who signed arbitration agreements containing class/collective action waivers should not be included on the opt-in notice list as their individual claims must be pursued through arbitration); *Gaffers*, 900 F.3d at 296 (employees who do not sign individual arbitration agreements are free to sue collectively, and those who do sign individual arbitration agreements are not) (citing *Epic Systems*, 138 S.Ct. at 1624). Here, the only employees included in the conditionally-certified collective are those "whose employment agreement does not contain a class or collective action waiver." (Dkt. 118 at 3.) By definition, any employee who signed a class/collective waiver is not part of the collective action and thus, should not receive a notice of the opportunity to opt in.[2]

---

[2] Plaintiff incorrectly claims that Menard "unilaterally reduced the scope of this certified collective action by over 27,000," arguing that "approximately 40,000" individuals should have received notice of her collective action, rather than the 12,837 that did. (Dkt. 162 at 2-3.) Based upon Menard's data, there were only 17,961 individuals who signed a No-Arb version of Menard's arbitration agreement, but later signed the post-*Epic Systems* class/collective action waiver, through either the merit review or promotion process, and did not receive notice of Plaintiff's collective action. However, this 17,981 includes part-time employees (i.e., employees who worked less than 40 hours per week, and thus, do not fall within Plaintiff's class definition (*see* Dkt. 118)), so the actual number of potentially-affected individuals is far less than Plaintiff claims.

3

A new case from the NLRB just last week even further clarified this point. This decision affirms Menard's approach to obtaining the class/collective waivers post-*Epic Systems*. In *Cordúa Restaurants, Inc.*, 368 NLRB No. 43 (Aug. 14, 2019), a copy of which is attached hereto as **Exhibit A**, the NLRB considered "two important issues of first impression regarding mandatory arbitration agreements following *Epic Systems*: (1) whether the [NLRA] prohibits employers from promulgating such agreements in response to employees opting in to a collective action; and (2) whether the [NLRA] prohibits employers from threatening to discharge an employee who refuses to sign a mandatory arbitration agreement. Consistent with *Epic Systems*, we find that the [NLRA] contains no such proscriptions." (Ex. A at 1.) In doing so, the NLRB held that "the promulgation of the revised agreement in response to [protected Section 7 activity—i.e., the filing of a collective action] did not violate the [NLRA]." (*Id.* at 2.) The NLRB noted that "the Supreme Court made clear in *Epic Systems* [that] an agreement requiring that employment-related claims be resolved through individual arbitration, rather than through class or collective litigation, does not restrict Section 7 rights in any way." (*Id.*) (citing *Epic Systems*, 138 S.Ct. at 1626). As the NLRB explained,

> To be sure, the revised agreement did require employees to agree not to opt in to a collective action. But the effect of that prohibition was simply to require employees to resolve their employment-related claims through individual arbitration rather than through collective actions. As we have explained, this requirement does not restrict the exercise of Section 7 rights under *Epic Systems.* Moreover, the revised agreement is enforceable in court or before an arbitrator; nothing in its terms suggests that employees would be disciplined for failing to abide by its provisions. In sum, ***any finding that the promulgation of the revised agreement violated the Act because it was in response to opt-in activity would be inconsistent with the Supreme Court's holding in Epic Systems*** that individual arbitration agreements do not violate the Act and must be enforced according to their terms.

(Ex. A at 3) (emphasis added).

The NLRB's decision in *Cordúa Restaurants* is dispositive of Plaintiff's argument that a second class notice is warranted. If an arbitration clause that expressly prohibits employees from opting into a collective action, and that was motivated by the filing of a collective action, does not violate the NLRA, the same has to be true for Menard's post-*Epic Systems* arbitration agreements. Plaintiff's contention that Menard's reintroduction of the class/collective action waivers constituted an "improper class communication," and/or that the post-*Epic Systems* arbitration agreements with class and collective action waivers are somehow unenforceable, simply cannot succeed in light of *Cordúa Restaurants*. This is a substantial shift from the manner in which district courts have dealt with similar issues pre-*Epic Systems*, making Plaintiff's argument to the contrary moot.[3]

### III. CONCLUSION

*Cordúa Restaurants* forecloses any argument that Plaintiff is entitled to a second notice in this case. Because there is no substantive right to bring an FLSA claim as part of a collective action, employees who signed valid class/collective action waivers, whether prior to Plaintiff's Complaint, during the regular promotion process, or post-*Epic Systems*, do not belong on the collective notice list in this case: they waived their right to pursue potential FLSA claims through a collective action, and thus are not putative plaintiffs. Plaintiff's Motion for Corrective Notice and Equitable Tolling (Dkt. 162) must be denied.

Dated: August 22, 2019

---

[3] With the exception of one, all of the cases Plaintiff cites in support of her "improper communication" theory pre-date *Epic Systems*. (*See* Dkt. 162 at 4 n.2.) The only case that post-dates *Epic Systems*—*Rogers v. WEBstaurant Store, Inc.*, 2018 WL 3058882, at *6 (W.D. Ky. June 20, 2018)—does not address class/collective waivers at all, but rather, concludes that e-mails offering to provide compensation to putative class members, in exchange for execution of a complete release of claims, were improper. *Id.* at **2-3, 5. As no such communications or offers occurred here, *Rogers* is unhelpful.

5

Respectfully submitted,

ICE MILLER LLP

By: */s/ Paul L. Bittner*
James E. Davidson (*pro hac vice*; OH 0024534)
Paul L. Bittner (*pro hac vice*; OH 0061674)
250 West Street
Columbus, OH 43215
Telephone: (614) 462-2700
Facsimile: (614) 462-5135
paul.bittner@icemiller.com
james.davidson@icemiller.com

Jenny R. Buchheit (*pro hac vice*; IN 26653-49)
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone: (317) 236-2100
Facsimile: (317) 236-2219
jenny.buchheit@icemiller.com

SPENCER FANE LLP

Brian Peterson, MO Bar #66144
Francis X. Neuner, MO Bar #48071
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
Telephone: (816) 474-8100
Facsimile: (816) 474-3216
bpeterson@spencerfane.com
fneuner@spencerfane.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2019, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

By: */s/ Paul L. Bittner*